PRICE, Judge.
Fred A. Naekley, the sole stockholder of Caddo Office Supplies, Inc., sold the principal assets of this corporation as a going' business to Zetco, Inc. as of October 1,1972. The sale included the accounts receivable, inventory, furniture, fixtures, vehicles, and prepaid advertising as reflected by an unaudited balance sheet prepared by Caddo’s accountants dated July 31, 1972.
Naekley subsequently received the remainder of the assets of the corporation consisting mostly of the proceeds of the sale and the cash on hand which was not transferred following a dissolution of the corporation.
A dispute thereafter occurred between Naekley and Zetco over the liability for an account payable owed to a supplier, Steel-case, Inc., for three delayed invoices totaling $7,993.70. Naekley contends that it was the intention of the parties that Zetco assume all accounts payable owed by Caddo known or unknown including the invoices in dispute. Zetco contends its intention was to assume only those accounts payable reflected in the accounting records of Caddo supporting the July 31, 1972 balance sheet and those accruing in the regular course of business subsequent to that date.
Naekley paid the amount of the disputed invoices to Steelcase, and brought this action against Zetco for recovery of the amount paid.
The trial court rejected Naekley’s demands, and he has appealed.
The invoices in question were for merchandise furnished by Steelcase in connection with a sale of furnishings by Caddo to television station KSLA in Shreveport in June, 1972. KSLA paid Caddo in full for the purchase on July 12,1972, which included the equipment furnished by Steelcase amounting to $7,993.70. Through oversight, Steelcase failed to invoice Caddo until February, 1973, long after the sale of the business to Zetco. The accounting procedure followed by Caddo was to note the indebtedness for merchandise purchased in the accounts payable ledger only upon receipt of the invoice from the supplier and after verification with a receiving report. Therefore, no entry existed on its accounting records at the time of the negotiation and completion of the sale to Zetco which gave any indication such an indebtedness existed.
The written agreement to buy and sell signed on September 30, 1972, provided for assumption of liabilities by Zetco as follows: ARTICLE 6. LIABILITIES OF SELLER.
6.01 Purchaser does not assume any of the debts, liabilities or obligations of seller except as follows:
(a) That certain item shown on the unaudited balance sheet of Seller prepared by Brooke, Mayo & Browning, Certified Public Accountants, dated July 31, 1972, as “Accounts Payable”. The total amount of such accounts payable to be assumed by Purchaser shall be subject to reduction (and payment thereof by Seller) only to the extent that the inventory value of the acquired assets (as set forth hereinabove) is less than $120,000.00
This trial court in its written reasons for judgment found this clause when construed with the remainder of the agreement to be unambiguous and limited the assumption of Zetco to those accounts payable traceable to the July 31st balance sheet.
Naekley contends the assumption provision is ambiguous and the trial court should have referred to the parol evidence to ascertain the true intent of the parties. He contends the negotiations for the purchase of his business were initiated by representatives of Zetco who were anxious to complete the transaction by October 1, 1972, and that the parties knew the specific amount owed to the various suppliers was not accurately reflected by the accounts payable shown on the July 31st balance sheet. Naekley contends this is self-evident as the accounts shown on the July 31st schedule would have been paid in the regular course of business prior to the signing of the purchase contract on September 30. He further contends the second sentence of sub *176 paragraph (a) provides for protection of Zetco in the event the assumed liabilities were misrepresented to an extent that the net assets being acquired were reduced below $120,000, which did not occur. The precise inventory taken on September 31, less the debts actually paid by Zetco showed it received net assets of $136,839.48. To further support his position, Nackley shows the amount of accounts payable actually paid by Zetco was $39,619.32 whereas the July 31st balance sheet reflected the total to be only $30,895.47. This he contends constituted an acknowledgment by Zetco that its responsibility was not limited to the specific amount shown on the July balance sheet.
In resolving the issue before us, we think it is significant that although Zetco did actually pay accounts totaling more than the amount shown on the July balance sheet, all of the accounts paid were traceable to the balance sheet and were on the accounting records of Caddo during the period of negotiation. This is distinguishable from the disputed invoices which formed no part of the records and could not have been discovered by examination of the books of the company.
Article 6, 6.01 (a) of the agreement, as quoted above, must be construed along with the warranties and representations of the seller as follows:
6.02 Seller agrees that it will pay and discharge all of its debts, liabilities and obligations other than the debts, liabilities and obligations specifically assumed in Article 6.01. .
8.02 The balance sheet of the Seller for the period ended July 31, 1972, and prepared by Brooke, Mayo & Browning, Certified Public Accountants, fairly represents the financial condition of the Seller as of said date, and the results of its operations for the period ended, all in accordance with generally accepted accounting principles and practices consistently applied.
8.09 Since July 31, 1972, the Seller has not, and prior to the closing Date, it will not have, entered into any transaction other than the regular and normal course of business, nor sold, transferred or conveyed any portion of the acquired assets except in the regular course of business.
The testimony of all accountants who testified on behalf of either party is to the effect that the omission of the disputed invoices from the accounts payable on the July 31st balance sheet caused the accounts payable and the inventory to be understated by the amount of the total of the invoices.
The misstatement, although completely unintentional and unknown to Nackley because of the error of Steelcase, resulted in these disputed accounts payable accruing out of the ordinary course of business. In the normal cycle of business and accepted accounting methods, the invoices would have been received for this merchandise in July, and an account payable established to balance a credit to inventory or an account receivable from KSLA until payment was received for the retail sale. This did not happen, however, and payment of the retail sales price was made by KSLA to Caddo in July which Nackley ultimately received. Under Nackley’s argument, the delayed invoices would obligate Zetco to pay these disputed invoices without receiving a corresponding account receivable or credit to inventory. Such a result is inequitable and the provisions of the contract should not be interpreted to give this effect.
The judgment appealed is affirmed. Costs of this appeal are assessed to appellant.